[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Both parties are native to the country of India where the marriage was arranged, according to that country's customs, by the parents. The parties married on November 28, 1986 in India, three months after they first met. Fourteen months later the plaintiff was able to join the defendant in the U.S.A. when she was issued a visa. The defendant was the plaintiff's sponsor. The plaintiff graduated from medical school in India in April 1985 and completed a residence in internal medicine following the marriage. After the marriage, the plaintiff continued to live with her parents. The plaintiff obtained a research job after the residency while waiting for her visa. The plaintiff obtained her first "green card" on August 25, 1988 and she has since received her permanent resident alien card.
At the time of the engagement and marriage, the defendant was a U.S.A. resident having arrived here in 1984 via an English passport. Prior to the marriage, the defendant had obtained employment with McCrory Stores in Maryland and continued to work for that company until August 27, 1991 when defendant resigned in order to return to college to complete his master's degree requirements. He has a B.S. in accounting and management from an Indian university.
Upon the plaintiff's arrival in the U.S.A., the plaintiff enrolled in the Stanley H. Kaplan course to prepare for the exams required for a license to practice medicine in the U.S.A. The defendant paid the tuition, (Defendant's Exhibit #2).
The court finds that the parties had agreed on a plan for themselves that would allow the plaintiff first opportunity to complete her professional education and then the defendant would be able to return to school as a full time student in order to complete his M.B.A. The first step was to have plaintiff pass her medical exams, which she took and passed in September, 1988 with the results released in November, 1988. While preparing for these exams the plaintiff did not work. CT Page 5984
The successful candidates then are matched with hospitals for residency with the available matches for plaintiff published the following March. The plaintiff travelled throughout the northeast to over 25 hospital interviews, having mailed 150 applications. The defendant purchased a train pass for the plaintiff's use and defendant also furnished a plane ticket to enable the plaintiff to attend an interview.
She was offered and accepted a residency at Yale University and has been assigned to a Waterbury hospital. The plaintiff expects to finish this residency in June, 1993. It took six months for the plaintiff to become employed.
The parties moved to Connecticut in June, 1990 from Pennsylvania where the defendant: had been transferred less than one year prior. In order to accommodate the plaintiff's employment in Waterbury, the defendant obtained a transfer by accepting a demotion from store manager to assistant store manager with an $8,000 annual pay cut from about $35,000 annually including bonus to about $26,500.
On October 2, 1990, the parties had purchased a new 1991 Acura auto, putting ownership in the style "Lingappa Suman or Veenavani" (Plaintiff's Exhibit B, Cert. of Title), which was financed by a loan from Chase Manhattan Bank and a $5,000 loan from the plaintiff's sister. In February 28, 1991 the parties purchased a new 1991 Toyota, taking title in the same fashion and financing the purchase through the same bank, requiring 48 payments of $225.86 monthly, (Plaintiff's Exhibit A). The plaintiff used the Acura and the defendant used the Toyota.
During the marriage several personal loans were made by the parties. The defendant lent money to a friend without first consulting the plaintiff. That he was no evidence that the money was lost. The parties loaned $10,000 to the plaintiff's uncle and $7,000 remains unpaid. The parties also gave $4,000 to the plaintiff's family for the wedding of plaintiff's sister that occurred in 1991.
In August, 1991 the defendant was accepted for the master's program in Public Administration at University of Hartford. The defendant paid $950 on the tuition account and enrolled on September 5, 1991. Before enrolling, the plaintiff was aware of defendant's plans and expressed her satisfaction before others at a July, 1991 birthday party held at a Redding restaurant.
From September 4, 1991 over a three day period the plaintiff withdrew $3,875 from her account located at the Naugatuck Valley Mall, (Defendant's Exhibit #3), and on or about September 6, 1991 CT Page 5985 the plaintiff moved from the marital residence while the defendant was at work. A direct conflict in the testimony occurs regarding what the plaintiff removed when she left. The court infers from the bank withdrawals that the plaintiff had planned the separation. The court believes the defendant's statement that the plaintiff removed her saris and her jewelry as well as her books and other clothes when she moved.
On September 17, 1991 the joint account of the parties was closed by the plaintiff's withdrawal of the balance of $1,720.63, (Defendant's Exhibit #4).
This marriage, arranged in good faith by the two families, was not a success. The plaintiff testified of an unfortunate episode that occurred in New York City in December, 1989 when she stayed overnight at a male doctor's apartment during her interviews. The defendant was raped by her host. She left the apartment and took a train to New Haven. The defendant learned of the assault, not from the plaintiff but by a telephone call from a friend in New Haven. The same friend, a doctor, had also visited the plaintiff at her home while the defendant was at work. The explanation that plaintiff gave for not returning home to Philadelphia to her husband the court finds difficult to believe.
The plaintiff testified on direct examination that, although Indian custom called for the defendant to send the airline ticket to enable her to join her husband, that she purchased her own ticket. On cross-examination the plaintiff admitted that the defendant paid for her ticket, (Defendant's Exhibit #1).
The plaintiff testified that although the defendant accepted a demotion to relocate to Waterbury that a pay cut was never discussed. That is consistent with the parties' plan which called for the defendant to return to school after the plaintiff finished her residency. The plaintiff was earning over $400 weekly net pay as a resident thereby offsetting he defendant's loss of income.
After the plaintiff moved out thereby signaling the end of the marriage, the defendant took what the court views as being defensive measures. He returned to the University of Hartford and withdrew from the school thereby recovering $531 of the $915 he had paid, (Plaintiff's Exhibit D). He returned to the Toyota dealer to resell the Toyota back to the dealer, recovering net proceeds of $1,278.85, (Plaintiff's Exhibit A). He went to he parking lot of Yale New Haven Hospital, located the Acura, cut the anti-theft bar attached to the steering wheel, brought the Acura to a Danbury dealer who purchased the car from the defendant for the loan balance and $731.17 additional cash paid by the defendant (Plaintiff's Exhibit B). The loss of the Acura greatly inconvenienced the plaintiff who had become indebted to her sister CT Page 5986 in order to purchase the car. The defendant cashed in joint savings bonds totaling $1,400 and closed a savings account containing $518.
There remains $9,053.86 that the defendant received from McCrory stores as a rollover of his 401(K) plan. The defendant has been receiving unemployment compensation since September 1991.
The plaintiff was supported by the defendant during the marriage until she obtained her residency, which completes her preparation to practice medicine. She is 30 years old and in good health.
The defendant has not completed his education as planned, has forfeited his management career at McCrory and must begin again. He is 36 years old and in good health.
The court finds that the $5,595 the plaintiff gathered from the bank accounts during the first week of September more than offsets the $5,000 downpayment on the Acura. The court finds that the plaintiff's earning potential as a medical doctor is balanced against the retirement account refunded to the defendant.
Having considered the statutory criteria and the credibility of the various witnesses the court enters the following judgment.
1. A decree is entered dissolving the parties' marriage on the ground of irretrievable breakdown. The defendant's counterclaim is dismissed as moot.
2. The plaintiff shall pay to the defendant the sum of $100 weekly as periodic alimony, for a period of two years unless the defendant sooner remarries or die. The term is non-modifiable. A wage withholding is ordered pursuant to 52-362 Connecticut General Statutes.
3. The plaintiff is declared sole owner of the $7,000 debt due from the plaintiff's uncle.
4. Each party shall retain the tangible personal property, bank accounts and autos each now has.
5. The plaintiff shall pay the liabilities listed on her financial affidavit and save the defendant harmless and indemnified.
6. The defendant shall retain his 401(k) account as his sole property.
7. The plaintiff's maiden name is ordered restored. CT Page 5987
The attorney for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.